IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-71-BO

| | |
|---|---|
| EDWARD EARL THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BLESSSED HOME INC., FELICIA N. )<br>ONUORAH, and AMOBI R. ONUORAH, )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

This matter is before the Court on the plaintiff's motion for partial summary judgment [DE 38]. The motion is now ripe for adjudication. For the reasons stated herein, the plaintiff's motion is GRANTED.

## BACKGROUND

Plaintiff Edward Thompson initiated this action by filing a verified complaint on January 30, 2013 alleging violations of the Fair Labor Standards Act ("FLSA"), the North Carolina Wage and Hour Act ("NCWHA"), and the North Carolina Retaliation Employment Discrimination Act ("REDA"), and alleging common law wrongful discharge against public policy. Plaintiff named Blessed Home, Inc. ("Blessed"), his corporate employer, and Felicia N. Onuorah ("Felicia") and Amobi R. Onuorah ("Amobi"), Blessed's sole owners and officers, as defendants. Plaintiff alleges that he was not paid minimum wage, overtime, or for all hours worked, and that he was terminated from his position as a habilitation technician at a group home in retaliation for complaining about defendants' unlawful pay practices and for participating in a U.S. Department of Labor ("DOL") investigation into those pay practices.

Defendants filed an answer claiming that Blessed is exempt from the FLSA pursuant to 29 U.S.C. §213(a)(15) and (b)(21). Plaintiff then filed an amended complaint and defendants filed an amended counterclaim in response which included a counterclaim for abuse of process. Plaintiff then filed a second verified amended complaint with leave of the Court.

Plaintiff now moves to dismiss, or in the alternative for summary judgment, on defendants' abuse of process counterclaim, for summary judgment on defendants' claimed FLSA exemption affirmative defense, and for partial summary judgment as to the issues that Blessed is subject to the FLSA and that defendants Felicia and Amobi are employers and proper defendants for plaintiff's claims under the FLSA and NCWHA.

## DISCUSSION

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of a genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Therefore the inquiry asks whether reasonable jurors could find for the plaintiff by the preponderance of the evidence. *Id.* Plaintiff must produce "significant probative

evidence tending to support the complaint" or provide "specific facts showing there is a genuine issue for trial." *Id.* at 249–50. The Court will not consider "unsupported assertions," or "self-serving opinions without objective corroboration." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

I.  ABUSE OF PROCESS COUNTERCLAIM.

> [A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended (sic) to be secured.

*Stanback v. Stanback*, 254 S.E.2d 611, 624 (N.C. 1979) (quotation omitted) *overruled on other grounds by Dickens v. Puryear*, 276 S.E.2d 325 (N.C. 1981). "Abuse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding." *Id.* (quotation omitted). "The ulterior motive requirement is satisfied when the plaintiff alleges that the [] action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used. The act requirement is satisfied when the plaintiff alleges that once the [] proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Id.* (citation omitted). "[T]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Id.* (quotation omitted).

Defendants' counterclaim alleges that plaintiff's suit is meritless, he is seeking monies to which he is not entitled, he is seeking to damage defendants' reputation and, on the day he was terminated, plaintiff allegedly threatened to shut defendants' business down. Taking all of the facts in the counterclaim as true, defendants have failed to properly allege a claim of abuse of

3

process. The counterclaim fails to allege that plaintiff committed any wilful act not proper in the regular course of this proceeding and is devoid of any factual allegations in support of any acts made by plaintiff to damage defendants' reputation (other than this suit itself), any use of process to gain advantage over defendants as to some matter that is separate from or collateral to this proceeding, or any damage to defendants' reputation or business. There is no evidence supporting such a claim. It is clear that plaintiff has pursued a legitimate lawsuit that is now at the summary judgment stage of the proceedings against defendants and that he is entitled to seek monies which he alleges were wrongfully withheld from him in violation of various state and federal statutes. In short, defendants fail to properly allege an abuse of process claim, and even if properly alleged, they have failed to come forward with any facts which support their claims. Accordingly, summary judgment is granted for plaintiff on defendants' counterclaim.

II. THE FLSA'S APPLICATION TO BLESSED.

Employees who work in an "enterprise engaged in commerce or in the production of goods for commerce" are protected by the minimum wage and overtime provisions of the FLSA. 29 U.S.C. § 206(a); § 207(a). Defendants claim that Blessed is not an enterprise subject to the FLSA and even if it is, it is exempted from the FLSA minimum wage and overtime provisions by 29 U.S.C. § 213(a)(15) and (b)(21). "[T]hese exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). "[T]he application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974).

4

A.  The FLSA's General Application to Blessed.

The FLSA defines what constitutes an enterprise:

> (1) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments . . . but shall not include the related activities performed for such enterprise by an independent contractor . . .
> (2) For purposes of paragraph (1), the activities performed by any person or persons –
>     (A) in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution . . . (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit)
> . . .
> shall be deemed to be activities for a business purpose.

29 U.S.C. § 203(r). "The [FLSA] thus requires a three-part showing to bring an entity or entities within the definition of enterprise: 1) the entity or entities must engage in "related activities," 2) performed through "unified operation" or "common control," 3) for a common business purpose. *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 289, 692 (4th Cir. 1990) (citing *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989).

An "enterprise engaged in commerce or in the production of goods for commerce" is defined in relevant part as:

> An enterprise that . . . (B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution . . . (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit) ; . . .

29 U.S.C. § 203 (s)(1)(B). It is clear that 29 U.S.C. § 203(s) creates three separate categories of enterprises that qualify as engaging in commerce which are sublisted as A through C. This construction means that the requirements of subpart A do not extend to cover subparts B and C and vice versa. Accordingly, although defendants go to great length to argue that plaintiff has not

5

shown that he engaged in commerce or the production of goods for commerce and that Blessed's gross volume of sales is not less than $500,000, it is to no avail. Plaintiff need not establish that Blessed is an enterprise engaged in commerce under § 203(s)(1)(A) if he can establish that it is such an enterprise under § 203(1)(B) or (C). *See Dole*, 912 F.2d 693–95 (noting that commerce requirement of § 203(1)(A) no longer applied to an institution primarily engaged in the care of the sick under the then newly enacted 29 U.S.C. § 203(s)(1)(B)).

Here, defendants admit that (1) Blessed is a for-profit corporation whose nature of business is operating group homes for the care of developmentally disabled/mentally challenged adults in Wake County, North Carolina, (2) Blessed is licensed by the North Carolina Department of Health and Human Services Mental Health Licensure Branch to operate such group homes, and (3) Blessed does and did operate three such group homes including the location where plaintiff worked. Each of the three group homes and Blessed as a whole are engaged in "related activities," thereby satisfying the first enterprise element. The Onuorahs were and are the sole owners and sole officers for Blessed, they personally own the three group home properties, and they had total control over plaintiff's work conditions including his schedule, pay, direction, supervision, and control of his employment. These factors combined with Blessed's overarching corporate control, satisfy the "unified operation," or "common control" enterprise element. The third element to establish that Blessed is an enterprise, the "common business purpose" is satisfied because Blessed is a for-profit corporation whose nature of business is operating these group homes all located in Raleigh, North Carolina. *See* 29 U.S.C. § 203(r)(2) ("the activities performed by any person or persons . . . in connection with the operation of . . . an institution primarily engaged in the care of the . . . the mentally ill or defective who resides on the premises of such an institution . . . shall be deemed to be activities

6

performed for a business purpose."). Accordingly, Blessed is an enterprise and the Court now turns to whether or not it is an "enterprise engaged in commerce or in the production of goods for commerce."

Blessed operates group homes specifically for the care of developmentally disabled adults. Blessed's admission criteria and evaluation/diagnosis policies require a doctor's order stating the client's diagnosis and ambulatory status prior to admission, a primary diagnosis of mental illness, and that a "comprehensive treatment and habilitation plan" be developed and initiated at the time of admission. The mental and psychological needs of potential clients were assessed by Blessed to determine whether they could be met prior to admission, as required by governing regulations. Blessed was required by law and/or its governing regulations to have a staff member at the group home. These facts establish that Blessed is an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(B) and is thus subject to the FLSA minimum wage and overtime provisions absent an applicable exception. *See Dole*, 912 F.2d at 693–95 (holding that defendant boards were liable under FLSA because their group home for the destitute was an institution primarily engaged in the care of the sick and the aged who resided on the premises of such institution because it required that its clients be unable to work due to age, or infirmity); *Mendez-Gonzalez v. Rodriguez Group Home, Inc.*, 2012 U.S. Dist. LEXIS 99519, *2–6 (S.D. Fla. July 18, 2012) (unpublished) (holding that group homes for mentally disabled, handicapped, and/or drug addicts owned and operated by defendant constituted a covered enterprise under § 203(s)(1)(B)); Dep't of Labor, Wage and Hour Division, Field Operations Handbook, Ch. 12, §§ 12g02, 12, and 14 (defining covered enterprises similar to defendants' enterprise).

Further, plaintiff is not an independent contractor which would render the FLSA inapplicable to his case. *See* 29 U.S.C. § 203(r). The "economic reality" test applies to FLSA claims. *See Dubois v. Secretary of Defense*, 1998 U.S. App. LEXIS 2167, *3 (4th Cir. Sept. 3, 1998) (unpublished) (citing *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981–82 & n.5 (4th Cir. 1983) for the proposition). Under the FLSA, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

> In determining whether individuals are 'employees' under FLSA, we consider the degree of control exercised by the employer over the workers; the workers' opportunity for profit or loss and their investment in the business; the degree of skill and independent initiative required to perform the work; the permanence or duration of the working relationship; and the extent to which the work is an integral part of the employer's business.

*Id.* (citing *United States v. Silk*, 331 U.S. 704, 716–17 (1947)). "The 'economic reality' test is based upon the totality of the circumstances, and no single factor is dispositive. *Id.* at *4 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Here, defendants admit that plaintiff was employed by Blessed and worked as a habilitation technician from on or about January 25, 2011 through September 15, 2011. Defendants Mr. and Mrs. Onuorah were and are the sole owners and officers for Blessed; they are the sole parties authorized to sign checks on behalf of Blessed; they personally and jointly own the three group home properties; and they had total control over all aspects of plaintiff's work conditions including his schedule, rate and method of pay, direction, supervision, and his employment. Defendant provided all training, tools, and equipment for plaintiff. Plaintiff's employment as a habilitation technician working for the defendants was his primary job and occupation during his employment with defendants from on or around January 25, 2011 through September 15, 2011, when defendants terminated his employment. Plaintiff was required by

regulation to be at the home when clients were present and could not leave the premises at night. Defendants testified that habilitation technicians, including plaintiff, require no particular skills or training, that the position is not a "professional" job, and they equate the job to babysitting. Defendants could terminate plaintiff at-will. Each factor of the economic reality test weighs strongly in favor of finding that plaintiff was an employee of defendants and not an independent contractor. *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 2014 U.S. App. LEXIS 2054, *3–6 (5th Cir. Feb. 3, 2014) (affirming summary judgment in favor of direct caregivers who worked in group homes for developmentally disabled adults, holding under the economic reality test the caregivers were employees in spite of signed contracts with employer stating that they were independent contractors).

Accordingly, the Court finds that the FLSA applies to Blessed and now turns to examining whether any of the explicit exemptions carved out in the FLSA apply.

B.  29 U.S.C. § 213(a)(15).

Defendants raise the affirmative defense that the exemption listed in 29 U.S.C. § 213(a)(15) applies and therefore the minimum wage and overtime requirements of the FLSA do not apply to Blessed. Section 213(a)(15) provides that the provisions of § 206 and § 207 shall not apply with respect to:

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)

29 U.S.C. § 213(a)(15). "As used in section 13(a)(15) of the Act, the term domestic service employment refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29

9

C.F.R. § 552.3. Courts have generally held, and the Department of Labor has interpreted, that such services are required to be performed in a "private home" for the exemption to apply. *See Welding v. Bios Corp.*, 353 F.3d 1214, 1216–19 (10th Cir. 2004) (reversing denial of summary judgment where companionship exemption was found not applicable because district court did not analyze each residence of its developmentally disabled clients to determine whether the services were provided in "private homes" and remanding for such determinations by living unit where each plaintiff worked); U.S. Dep't of Labor Opinion Letter No. FLSA2001-14 (May 14, 2001) (advising that companionship services exemption did not apply because group home did not satisfy "private home" requirement); *see also Chapman*, 2014 U.S. App. LEXIS 2054 at *7–8 (holding that "private home" requirement applied to companionship services exemption and that group homes consisting of three clients per living unit were not private homes because clients would not necessarily have resided in the living units but for the assistive living services).

Here, the defendants' group home does not constitute a "private home" as required by the "companionship services" exemption. "[W]ho has the ultimate management control of the living unit and whether the living unit is maintained primarily to facilitate the provision of assistive services" are the key inquiries in determining if living units are private homes. *Welding*, 353 F.3d at 1219. The 10th Circuit outlined six, non-dispositive factors to assist in making this determination. *Id.* The court considered (1) whether the client lived in the unit as his or her private home before receiving services, (2) who owned the unit, (3) who managed and maintained the residence, (4) if the client would be allowed to live in the unit without receiving services, (5) the relative difference in the cost/value of the services provided and the total cost of maintaining the unit, and (6) whether the service provider uses any part of the unit for its own business purposes. *Id.* at 1219–20. Here, the clients (1) did not reside at Blessed's group home

before receiving services, (2) the home was owned by Mr. and Mrs. Onuorah, (3) they managed, furnished, and maintained the premises, the clients did not even have keys to the front door or medicine cabinets, and did not have any say in who the other residents of the house would be, and (4) the clients would not be allowed to live at the home without receiving treatment. These four factors clearly support a finding that the group home was not a private home. Therefore the § 213(a)(15) exemption does not apply to Blessed in this case and summary judgment is granted in favor of plaintiff on this issue.

    C.    29 U.S.C. § 213(b)(21).

Defendants also argue that the "domestic services" exemption listed under 29 U.S.C. § 213(b)(21) applies. Section 213(b)(21) exempts from the FLSA overtime provisions "any employee who is employed in domestic service in a household who resides in such household." The related regulations incorporate "domestic service" as a requirement for the exemption. *See* 29 C.F.R. § 552.102(a); § 552.100(a)(2); § 552.109(c). The "private home" requirement of the "domestic service" definition of 29 C.F.R. 552.3 is incorporated into the domestic service exemption. *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 441–42 (S.D.N.Y. 2012) (citing *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007) to support its ruling that the § 213(b)(21) domestic services exemption incorporates the § 552.3 definitions of what work qualifies as "domestic service"). Because the "private home" requirement also applies to § 213(b)(21), and, as discussed *supra* Part II.B, plaintiff did not work in a private home, the exemption does not apply to Blessed and summary judgment is granted in favor plaintiff on this issue.

    III.    FELICIA AND AMOBI'S STATUS AS EMPLOYERS.

Plaintiff argues, and defendants do not contest, that Felicia and Amobi Onuorah face personal liability and are proper defendants in this action because they are employers under the

FLSA and NCWHA. Under the FLSA, the "employer" is liable for an employee's unpaid minimum wage and overtime wages, liquidated damages, costs, and reasonable attorney's fees, and in the case of retaliatory discharge, legal and equitable relief including back pay and liquidated damages. 29 U.S.C. § 216(b). Under the NCWHA, the "employer" is liable for an employee's unpaid wages, liquidated damages, costs, and reasonable attorney's fees. N.C. Gen. Stat. § 95-25.22. "In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance." *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009) (citing *Laborer's Int'l Union of N.A. v. Cose Farms, Inc.*, 488 S.E.2d 632, 634 (N.C. 1997)). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." N.C. Gen. Stat. § 95-25.2(5); 29 U.S.C. § 203(d). Under both the FLSA and NCWHA an individual can be an "employer" and therefore be personally liable for wages and damages. *Garcia*, 644 F. Supp. 2d at 720 (citing *Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989).

To determine whether an individual is an "employer," courts apply an "economic reality" test, which examines:

> the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages. Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. These factors are not exclusive nor is any one factor dispositive.

*Garcia*, 644 F. Supp. 2d at 720–21 (citations and quotations omitted).

Here, defendants Felicia and Amobi Onuorah both admit that they: (1) had the power to hire and fire plaintiff; (2) supervised and controlled plaintiff's work schedules and/or conditions

of employment; (3) determined plaintiff's rate and method of payment; and (4) maintained plaintiff's employment records. They also admit that they jointly made the decision to terminate plaintiff. The Court finds that both Felicia and Amobi Onuorah are "employers" under the FLSA and NCWHA. Accordingly, the Court grants plaintiff's motion for partial summary judgment as to the issue that they can each be held individually liable and are proper defendants for plaintiff's claims under the FLSA and NCWHA.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion is GRANTED. Summary Judgment is awarded in favor of plaintiff as to defendants' abuse of process counterclaim and defendants' FLSA exemption affirmative defenses. Partial summary judgment is awarded in favor of plaintiff as to the issues that Blessed is subject to the FLSA and Felicia and Amobi Onuorah are "employers" and therefore proper defendants for plaintiff's claims under the FLSA and NCWHA.

SO ORDERED.

This the 16 day of May, 2014.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE